

WWW.RIVKINRADLER.COM

**MATTHEW V. SPERO**
(516) 357-3593
matthew.spero@rivkin.com

December 12, 2013

<u>VIA ECF</u>

Hon. Elizabeth S. Stong
United States Bankruptcy Court
Eastern District of New York
Conrad B. Duberstein U.S. Courthouse
271-C Cadman Plaza East
Suite 1595
Brooklyn, NY  11201-1800

> *In re:*  *Metro Fuel Oil Corp., et. al. (the "Debtors")*
> *No. 12-46913-ess (Jointly Administered)*
> <u>RR File No.: 1132-20</u>

Dear Judge Stong:

We represent Bayside Fuel Oil Depot Corporation ("Bayside") and submit this letter in response to Michael A. Cohen Esq.'s December 11, 2013 Letter (the "Cohen Letter") and Glenn P. Berger Esq.'s December 12, 2013 Letter (the "Berger Letter"), each addressed to Your Honor.

### A. <u>Michael A. Cohen Esq.'s December 11, 2013 Letter</u>

On December 10, 2013, the Court scheduled a pre-hearing conference for December 13, 2013 (the "Conference") to address Bayside's Motion to Convert the Debtors' Chapter 11 Cases to Chapter 7 Cases (the "Motion"), the hearing on which Motion is scheduled for December 17, 2013.

It is not clear what the purpose of the Cohen Letter is and what relief, if any, the Debtors intend to request at the Conference, as opposed to seeking appropriate relief under the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules of this Court.

The Cohen Letter indicates that the Debtors are "concerned" about the impact that certain subpoenas (the "Subpoenas") served by Bayside on, among others, AlixPartners ("AP") and the Debtors' President and Vice President, will have on "estate resources" and "ongoing settlement negotiations."

As to the estates' resources, it is clear by now that the Debtors' cases are hopelessly administratively insolvent. The Cohen Letter fails to indicate how the appearance of the

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000  F 516.357.3333

555 Madison Avenue
New York, NY 10022-3338
T 212.455.9555  F 212.687.9044

21 Main Street, Court Plaza South
West Wing, Suite 158
Hackensack, NJ 07601-7021
T 201.287.2460  F 201.489.0495

1



Hon. Elizabeth S. Stong
December 12, 2013

Debtors' President and Vice President (both insiders of the Debtors) at the December 17, 2013 hearing on the Motion (the "Conversion Hearing") will impact the estate's resources. It is also unclear why AP, who has prepared and executed the Debtors' operating reports on behalf of the Debtors, should also not be required to testify. The argument that the Debtors are suddenly "concerned" that a few hours of AP's time testifying at the Conversion Hearing will impact "estate resources" lacks credibility. For unknown reasons, the Debtors did not share this level of "concern" about AP's participation in these cases until now, after AP was paid over $2 million in fees and incurred an additional nearly $900,000 more in these cases.[1]

The Cohen Letter appears to be motivated by a simple desire to protect the Pullos from testifying. It also signals that the Debtors' cases are so administratively insolvent that they are concerned about the cost the Debtors will incur for their President and Vice President to testify at the Conversion Hearing.[2]

The Debtors voluntarily sought Chapter 11 relief and should not now be permitted to utilize their own administrative insolvency to obstruct Bayside's statutory rights as a creditor (to be precise, the single largest unsecured trade creditor). If the cases are as administratively insolvent as the Cohen Letter suggests, then it may be appropriate for this Court to convert these cases *sua sponte* and avoid the expenses the Cohen Letter appears to be so concerned about.

The Cohen Letter's concerns about the Subpoenas' "impact" on the parties' "focus" on settlement negotiations are equally meritless. As to AP, the Cohen Letter does not disclose AP's role, if it even has a role, in any settlement discussions. The Cohen Letter likewise does not explain why the Debtors' principals' appearance at the Conversion Hearing will have any effect on these negotiations. To be clear, despite a lot of talk by the Debtors in open Court about settlement in the nine months since they sold their assets, they still have not filed a plan. Based on the record, there is no settlement, there is no plan, there is no reorganization, and there is no way for the Debtors to even pay their administrative expense creditors in full (to say nothing of general unsecured creditors). Why the Debtors' "focus" on "settlement negotiations" would suddenly be "impacted" by the Subpoenas now, approximately fifteen months after these cases were filed, warrants an explanation to the Court from the Debtors.

Finally, the Cohen Letter requests the "opportunity to discuss" the Subpoenas at the Conference. If the Debtors wish to object to the Subpoenas, it is inappropriate for them to do so via a letter to the Court or a discussion at a pre-hearing conference. Rather, they must make a motion to quash, as set forth in Federal Rule of Civil Procedure 45(c)(3), made applicable by

---

[1] Through October 31, 2013, according to the Debtors' November 20, 2013 operating report.

[2] Mr. Cohen's concerns about expenses are disingenuous. Unlike counsel to New York Commercial Bank and AP, Mr. Cohen would not even extend the professional courtesy of accepting service of the Subpoenas by email on behalf of the Debtors, and therefore caused Bayside to incur the additional and unnecessary expense of requiring a process server to effect personal service on the Debtors' President and Vice President at their place of business. The Debtors seem to have no qualms about forcing creditors to incur unnecessary expenses, at the same time that they are wielding the "expenses excuse" and their bankruptcies as a sword to impede creditors' rights to due process.



Hon. Elizabeth S. Stong
December 12, 2013

Bankruptcy Rule 9016. The fact is that Bayside carries the burden of demonstrating cause for the Conversion Motion. Regardless of what agreement the Debtors previously reached with respect to NYCB's conversion motion, the Debtors and their counsel cannot interfere with Bayside's right to subpoena and call witnesses in an effort to carry its burden at the Conversion Hearing.

Unless this Court is prepared to convert these cases *sua sponte,* the Debtors should not deny the Court and the parties the opportunity to hear testimony from the Debtors' President and Vice President, as well as the party that signs the Debtors' operating reports (AP), regarding the Debtors' administrative insolvency and failure to file a plan.

### B. Glenn P. Berger Esq.'s December 12, 2013 Letter

The Berger Letter, which joins in the relief sought by the Cohen Letter, is similarly misguided. The Berger Letter feigns ignorance as to what "conceivable relevance" testimony that the Debtors' President and Vice President, who are the majority shareholders that made the decision to file these cases under Chapter 11, would have on the conversion of these cases to Chapter 7. The Berger Letter even goes so far as to claim that the Pullos "cannot fathom" what knowledge they would have that would be relevant to the Conversion Motion, which raises the following concerns:

- Who has knowledge of the Debtors' decision to maintain these cases in Chapter 11?

- If it is not the Pullos, who are the Debtors' principals, President, and Vice President, then who has such knowledge?

- Who is making decisions for the Debtors, if not the Pullos? If not the Pullos, then whom?

If the Pullos are not making decisions for these Debtors and have no knowledge of the decision to maintain these cases in Chapter 11 or convert them to Chapter 7, the Court should *immediately* hold an evidentiary hearing on the issue of why, and at whose direction, these cases are remaining in Chapter 11.

Incredibly, the Berger Letter claims that the Pullos actually *take no position* with respect to the Conversion Motion. If the Debtors' principals, who are the President and Vice President and guarantors of the Debtors' multi-million dollar secured debt, do not take a position on whether the Debtors' cases should remain in Chapter 11 or be converted to Chapter 7, then who *would be* taking such a position?

The Berger Letter seeks to inflame these cases by alleging that the motivation for the Subpoenas is to "harass" and "burden." However, the Berger Letter actually underscores the

3



Hon. Elizabeth S. Stong
December 12, 2013

*urgent* need for this Court to immediately hear testimony from the Debtors' insiders as to who is making decisions for the Debtors, what the Debtors' plan is, if any, and whether to convert these cases to Chapter 7. If the Pullos cannot provide this testimony, then Mr. Berger and/or Mr. Cohen should inform the Court and the other parties who *can* provide this testimony, and the Court should direct those parties to appear at the Conversion Hearing so that Bayside's due process rights are not impaired.

Respectfully,

RIVKIN RADLER LLP

Matthew V. Spero

cc: All parties receiving notice via ECF.

2893196 v1